UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JONATHA YOSVANI V.V.,

Petitioner,

v.

WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,

Respondent.

No. 1:26-cv-03531-TLN-JDP

A # 244-136-800

**RELEASE ORDER**

This matter is before the Court on Petitioner Jonatha Yosvani V.V.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus.  (ECF No. 1.)  Respondent filed a consolidated Answer and Opposition to Habeas Petition and Opposition to All Relief.  (ECF No. 6.)  For the reasons set forth below, Petitioner's Habeas Petition is GRANTED.  (ECF No. 1.)

///

///

[1]    The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a noncitizen who entered the United States on August 10, 2023.  (ECF No. 6 at 14.)  He arrived with a scheduled CBP One appointment.  (*Id.* at 12.)  Petitioner was issued a Notice to Appear and paroled into the United States.  (*Id.* at 12, 14.)

On March 7, 2026, Petitioner was arrested in Hialeah, Florida, on an out-of-county warrant related to a misdemeanor traffic capias warrant from 2024.  (*Id.* at 23.)  According to the Government's documents, in May of 2024, Petitioner was charged in Hillsborough County, Florida, for the offense of no driver's license.  (*Id.* at 25.)  After Petitioner failed to appear at the arraignment, the court issued a capias warrant.  (*Id.*)  This case remains pending.  (*Id.* at 23.)

The day after Petitioner was arrested, the Department of Homeland Security ("DHS") placed an immigration detainer on him.  (*Id.* at 19.)  Petitioner was then transferred to custody of DHS and served a warrant pursuant to § 236 of the Immigration and Nationality Act ("INA"), which codifies the arrest, detention, and release of noncitizens under 8 U.S.C. § 1226.[2]  (*Id.* at 28.)  Petitioner was transferred to detention facilities in Florida (Alligator Alcatraz), New Mexico, Texas, and Arizona before arriving to the California City Immigration Processing Center.  (ECF No. 1 at 2–3.)

On May 7, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus.  (*Id.* at 1.)  Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (*Id.* at 3.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has

[2]   The warrant also cites § 287 of the INA, which is codified at 8 U.S.C. § 1357 and defines the powers of immigration officers and employees.

2

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.   ANALYSIS**

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 3.)  In opposition, Respondent argues Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("§ 1225(b)(1)(A)") and therefore has no liberty interest.  (ECF No. 6 at 2–6.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.   Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d

1025, 1032 (N.D. Cal. 2025).

It has long been established that individuals like Petitioner, who have been released on parole, maintain an interest in their continued liberty. *See Morrissey*, 408 U.S. at 482–83. As the Supreme Court recognized in *Morrissey*, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482. This liberty is "valuable," and "[i]ts termination calls for some orderly process[.]" *Id.*

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. The Government's decision to release Petitioner on parole nearly three years ago was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Id.* Respondent does not claim Petitioner violated the terms of his parole, nor does the record indicate that Petitioner was found to have violated parole or that his parole was rescinded. Petitioner thus maintains a powerful interest in his own freedom protected by the Fifth Amendment. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

Respondent's argument that Petitioner is subject to mandatory detention under § 1225(b)(1)(A) is unavailing. Section 1225(b)(1) provides a process for the detention and expedited removal of certain "[noncitizens] arriving in the United States and certain other [noncitizens] who have not been admitted or *paroled*." 8 U.S.C. 1225(b)(1) (emphasis added). The statute's scope is defined as follows:

> A[ ] [noncitizen] described in this clause is a[ ] noncitizen] who is not described in subparagraph (F), who has not been admitted or *paroled* into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the [noncitizen] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II) (emphasis added).

Petitioner was paroled into the United States on August 10, 2023, and there is no indication from the record that his parole was rescinded. (ECF No. 6 at 12.) Respondents' argument that § 1225(b)(1)(A)'s detention authority applies to Petitioner plainly fails and does

4

not alter the Court's finding that Petitioner maintains a protected liberty interest.[3]

B.    Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe*, 787 F. Supp. 3d at 1094.  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes.  *Hernandez*, 872 F.3d 976.  Petitioner maintains that he is not a danger or a flight risk, and Respondent does not claim he is.  The risk that Petitioner is

---

[3]    The Court also notes the warrant for Petitioner's arrest issued by DHS was made pursuant to section 236 of the INA, which codifies 8 U.S.C. § 1226, not § 1225(b)(1)(A). (*See* ECF No. 6 at 28.)  Respondent's position that Petitioner is now detained under § 1225(b)(1)(A) contradicts their own records and appears to be a justification adopted post hoc and raised for the first time in litigation. *See Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 67 (D.N.H. 2025) (similarly finding petitioner subject to § 1226(a) where their order of release on recognizance and warrant were issued pursuant to § 1226(a)).

being detained without proper justification is therefore exceedingly high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondent. Respondent sets forth no legitimate interest in detaining Petitioner absent these processes. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention to determine whether his detention was justified. He received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.[4]

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1.    Respondent must IMMEDIATELY RELEASE Petitioner Jonatha Yosvani V.V. (A # 244-136-800) from custody under the same conditions he was released prior to his current detention. At the time of release, Respondent must return all of Petitioner's documents and possessions. **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2.    Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that the

---

[4]    Petitioner also claims his detention violates the Fourth Amendment. (ECF No. 1 at 3.) As the Court finds Petitioner is entitled to habeas relief on his Fifth Amendment claim, the Court need not consider his Fourth Amendment claim.

Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

      3.    **The Clerk of Court is directed to serve California City Immigration Processing Center with a copy of this Order.**

      4.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

    IT IS SO ORDERED.

Date: May 18, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE